### No. 11,586.

PUBLIC SERVICE COMPANY OF COLORADO *v.* INDUSTRIAL COMMISSION, ET AL.

Decided October 11, 1926.

Proceeding under the workmen's compensation act. Judgment for claimant.

*Affirmed.*

1.   WORKMEN'S COMPENSATION—*Accident Arising out of and in Course of Employment.* Evidence reviewed, and employe of a gas company who was found dead in a gas filled basement held to have met his death in an accident arising out of and in the course of his employment.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. D. L. WEBB, Mr. FRED N. HOLLAND, for plaintiff in error.

Mr. William L. Boatright, Attorney General, Mr. Jean S. Breitenstein, Assistant, Mr. Wayne C. Williams, for defendants in error.

*En banc.*

Mr. Justice Denison delivered the opinion of the court.

The Industrial Commission awarded Marie Clark compensation for the death of her husband, Ralph Clark, an employee of plaintiff in error. The district court affirmed the award and the company comes here for a review. Their proposition is that the undisputed evidence shows that the deceased did not die by an accident in the course of or arising out of his employment.

The evidence, none of which is in dispute except as we hereinafter notice, was substantially as follows: Clark was a regular hand of the Public Service Company; his usual employment was digging and filling ditches for laying pipes; he sometimes would connect a pipe, put in a coupling or a cap to keep the dirt out. On Monday, June 15, 1925, Clark was working with a gang putting gas pipes into No. 801, East 18th avenue, Denver. He worked outside, digging, and did not enter the premises. He went, however, with another man into the basement of No. 805, the adjoining house, to examine the gas pipes there with reference to their connection with those in 801. While there one of them asked the witness, Mrs. Goodenough, who had charge of both houses, if they might use the toilet in 801 and she said they might. No. 801 was two stories and basement. There was no toilet on the first floor or in the basement but there was one on the second floor. There was no tenant on the first floor or basement. The witness Blumberg and his wife occupied rooms on the second floor and a man also had one room there. On the night of the 15th of June the work at 801 of the gang in which Clark was employed was finished (unless possibly the plug hereinafter mentioned

was not placed) and the gas stove on the second floor was in use, likewise, on the next morning at eight o'clock, but shortly after that hour the gas failed. On the morning of the 16th at 8 o'clock, Clark assembled with the gang at the tool box near 801. Tools were taken out and all went to 1832 Clarkson, about a block away, to begin another job. There the foreman laid out some digging work for Clark who went to the box and brought some canvas and then went away again toward the tool box, saying nothing as to his errand there. Not long after, about fifteen minutes, the foreman went to the tool box to get something and was met by the witness Blumberg, who said there was a bad gas leak in 801. The foreman hastened to the basement, found it full of gas and a plug gone at a T in the pipe; he stuffed in a rag, ran out and called another workman, one Betterman, to bring a plug, which was done. In putting it in Betterman stepped on Clark who was thereby found lying unconscious on the cellar floor near the open pipe. A wrench and plug were on the cellar floor, the wrench almost under him, the plug five or six feet away. It is customary to take out and put in plugs with a wrench. He was carried to the open air but all efforts to revive him failed, and he died of asphyxiation by gas. He had been gassed once before but had recovered. The foreman testified that, on the night of the 15th, Betterman had put in a plug and left all in order for the meter gang, who afterwards put in the meter and so left the job finished. Betterman testified to the same facts except that he said that he screwed in the plug above a rag that was already there temporarily. Bible, the meterman, testified that the same Monday afternoon, the 15th, he took out the plug and rag when he put in the meter and afterwards replaced the plug so that all was in order that night. Blumberg, one of the tenants on the upper floor, testified that his wife cooked supper and breakfast on their gas

stove, but that shortly after eight o'clock, a. m. on the 16th, the gas failed, whereupon he went to the basement, found it full of gas, rushed away for help and found the foreman as above stated.

There are three conceivable explanations for Clark's conduct which resulted in his death: (1) Suicide; (2) wanton mischief; (3) an attempt to amend a fault in the pipe. The first was rightly rejected because there was no evidence of any purpose, reason or wish for such a thing. The second is most improbable in a man mature, with wife and children, two years in the employment in which he died. The third is the most likely of the three; we can think of no other, and it is fair deduction from the evidence above detailed.

The most probable purpose with which he went to the house was for the toilet. He had leave the previous day to use it. Something diverted him, perhaps the smell of gas, which led him to the cellar if he had not perhaps gone there to look for a watercloset. Is it not probable that Bible or Bible's helper (for he had one working with him), forgot to close the pipe with a plug but left a rag in? The putting in a plug was a routine thing with them, which we all know is sometimes remembered to have been done when really forgotten. At all events it is certain that something led him to go to the tool box (perhaps back from the cellar to the tool box as the foreman later did) and get a wrench and to go to the cellar and to do something with reference to the gas pipe. If it had been left with a rag only he may have been overcome before he could put a plug in; he may have taken a plug from the tool box as well as the wrench, dropped it and have been overcome before he could find it. A plug was found on the floor some four or six feet from him and the wrench about under him. All these suggestions are mere probabilities, it is true, but they or something more or less like them may be fairly inferred from the

evidence, and if the deceased was in the cellar for the honest purpose of doing some such thing for his employer, it was within the course of his employment, and if so, his accidental asphyxiation arose out of that employment.

We cannot say that the conclusion of the commission that the accident was in the course of and arose out of his employment, had no evidence to justify it.

Judgment affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE ADAMS not participating.